# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

ANGELA HOYLE,

    Plaintiff,

v.   No. 2:22-cv-02665-MSN-tmp

WELLPATH, LLC,

    Defendant.

## ORDER DENYING PLAINTIFF'S UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT

Before the Court is Plaintiff's[1] Unopposed Motion to Approve Settlement Agreement, filed September 15, 2023.  ("Motion," ECF No. 25.)  As suggested in its title, Defendant does not object to the Motion.  For the reasons set forth below, the Motion is **DENIED**.

## BACKGROUND

Plaintiff—an employee of Defendant—initiated this case on September 28, 2022, alleging that Defendant failed to pay her all the overtime compensation due under the Fair Labor Standards Act ("FLSA").  (*See* ECF No. 1 at PageID 1.)  Specifically, Plaintiff alleged that Defendant did not implement a system to keep track of employees' work hours during a service outage of Defendant's timekeeping and payroll system ("the Kronos Outage") that occurred in December

---

[1] Plaintiff is represented in this matter by two attorneys from two different law firms.  Only one of those attorneys—Mr. Parmet—filed the Motion and supporting documents.  To avoid confusion, the Court will refer to Mr. Parmet as "Plaintiff's Counsel" and to Ms. De Arcangelis (Mr. Parmet's co-counsel) as "Ms. De Arcangelis."

2021.  (*Id.*)  According to Plaintiff, this failure resulted in employees not receiving their wages, including overtime, on time and in full.  (*Id.* at PageID 2.)

On July 14, 2023, parties filed a Joint Status Report and Notice of Settlement advising that they had settled and that Counsel would prepare a settlement agreement.  (ECF No. 23.)  They filed the Motion now before the Court on September 15, 2023 seeking approval of the settlement agreement ("the Agreement").  (ECF No. 25.)

## **STANDARD OF REVIEW**

The FLSA imposes a minimum wage and an overtime wage for several categories of employee.  29 U.S.C. §§ 206-07.  To ensure compliance with the overtime and minimum wage provisions, the FLSA permits an employee to sue his employer to recover unpaid wages, an additional and equal amount as liquidated damages, and reasonable attorneys' fees.  *Id.* § 216(b).

"The provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement." *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 3:11-cv-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).  One exception applies when courts "approve settlement of suits brought in federal district courts pursuant to Section 16(b) of the FLSA." *Id.* (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).[2]

---

[2] There is a circuit split as to whether the settlement of FLSA claims requires court approval. *Compare, e.g., Martin v. Spring Break '83 Prods., LLC,* 688 F.3d 247, 256 (5th Cir. 2012) (not requiring court approval) *with Lynn's*, 679 F.2d at 1354 (requiring court approval). The Sixth Circuit has not spoken directly on this issue, but district courts in the Sixth Circuit have regularly required court approval of FLSA settlements. *See, e.g., Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024 (W.D. Tenn. 2016); *Cardwell v. RPM Wholesale & Parts, Inc.*, Civil Case No. 21-10831, 2021 WL 5563979 (E.D. Mich. Nov. 29, 2021); *Love v. Gennett Co. Inc.*, No. 3:19-cv-296, 2021 WL 4352800 (W.D. Ky. Sept. 24, 2021).

In reviewing a proposed FLSA settlement, a court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's*, 679 F.2d at 1355; *see also Green v. Hepaco, LLC*, No. 2:13-cv-02496, 2014 WL 2624900, at *3 (W.D. Tenn. June 12, 2014). Several factors inform that determination:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)). Additionally, a court must ensure the claimants have filed written consents with the court as mandated by the FLSA. *See* 29 U.S.C. § 216(b) (providing that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

## **DISCUSSION**

The Court has several concerns about the Motion and Agreement that render it unable to approve of the Agreement without more.

**I.    Request for Dismissal**

Plaintiff asks the Court to file an order simultaneously approving the Agreement and dismissing the matter with prejudice. (*See* ECF No. 25 at PageID 60.) While the Motion includes citations to other courts that have done as requested, this Court seconds the concerns raised by a different Judge in this District about the propriety of such timing:

> Although courts can retain jurisdiction to enforce the terms of a settlement agreement, *id.*, granting an immediate dismissal here would require more than mere enforcement of a standard settlement agreement. If the Court approved the settlement and dismissed the case at the same time, it would effectively be allowing any opt-in plaintiffs to opt into a litigation that has already been dismissed. After

3

> dismissal, the Court would not simply be retaining jurisdiction over the parties to a settlement, but would effectively be asserting jurisdiction over new parties and their claims. *See O'Bryant*, 2020 U.S. Dist. LEXIS 138599, at *33-34. Such post-dismissal opt-ins are not permissible. *Id.*; *Xiao Ling Chen v. Xpresspa at Terminal 4 JFK LLC*, No. 15 CV 1347 (CLP), 2018 U.S. Dist. LEXIS 169758, at *17 (E.D.N.Y. Mar. 30, 2018) ("If the Court dismisses the case, then recipients of the settlement checks would have no litigation to opt in to."); *Leigh v. Bottling Grp., LLC*, No. DKC 10-0218, 2011 U.S. Dist. LEXIS 33147, at *5 (D. Md. Mar. 29, 2011) ("[I]f the named plaintiffs settle their claims, the action may be rendered moot."); *Faubel v. Grogg's Heating & Air Conditioning, Inc.*, No. 2:17-cv-02410, 2018 U.S. Dist. LEXIS 86766, at *4–5 (S.D. W. Va. May 22, 2018) (referring to a "general consensus that an FLSA action becomes moot once the named plaintiffs settle their claims").

*Coleman v. Amazon.com, Inc.*, No. 21-cv-2200, 2023 U.S. Dist. LEXIS 117314, at *8 (W.D. Tenn. July 7, 2023). Parties should seek approval after all parties are before the Court.

**II.     Attorneys' Fees**

The Court also has serious concerns about the proposed attorneys' fees. "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Pittman v. Matalco (U.S.), Inc.*, Case No. 4:18CV203, 2018 WL 6567801, at *1 (N.D. Ohio Dec. 13, 2018) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). In determining the reasonableness of attorneys' fees, "[a] district court has discretion to choose between the percentage-of-the-fund method and the lodestar method . . . ." *Baker v. ABC Phones of N.C., Inc.*, No. 19-cv-02378-SHM-tmp, 2021 U.S. Dist. LEXIS 208344, at *11 (W.D. Tenn. Oct. 28, 2021) (citing *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011)). *See also Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993). "But even where attorney fees are sought pursuant to the percentage of the fund method, 'counsel must submit evidence providing a factual basis for the award.'" *Diaz v. Rockland Gardens Assocs.*, No. 22-CV-3281 (KMK), 2023 U.S. Dist. LEXIS 19024, at *10 (S.D.N.Y. Feb. 3, 2023) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)). A court can also consider

4

the lodestar as a cross-check to the percentage-of-the-fund award. *See Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

Here, Plaintiff's Counsel seeks $620,000 in attorneys' fees.[3] Significant to the determination of whether this amount is reasonable, parties consider the total settlement to amount to $4,199,725—$1,550,000 of which constitutes "new funds" for distribution to putative collective members and $2,649,725 of which represents the amount of alleged overpayments Defendant has agreed to forgive under the Agreement. (*Id.* at PageID 79–80. *See also* ECF No. 25-2 at PageID 95.) Thus, the requested attorneys' fees constitute 14.76% of the total settlement figure but 40% of the funds to be distributed to the collective (the "new funds"). (ECF No. 25-1 at PageID 79–80.) In support of this amount, Plaintiff's Counsel filed a declaration explaining that, in his experience, firms operating on a contingency basis (as here) seek 35-40% of the gross settlement amount, with very few accepting cases with a lower than 40% fee. (ECF No. 25-3 at PageID 111.)

It bears mentioning at the outset that Defendant evidently forgave the alleged overpayments "*prior to this lawsuit being filed*." (ECF No. 25-2 at PageID 95 (emphasis added).). The Court thus does not find the 14.76% figure particularly compelling for purposes of determining an appropriate attorneys' fee, notwithstanding Plaintiff's Counsel observation that such forgiveness was merely "a promise." (*See* ECF No. 25-1 at PageID 80 n.3.) In any event, the Court is not sure how Plaintiff's Counsel arrived at some of the sums offered in support of the requested fee amount. According to him, Counsel's current lodestar is $125,250 with a multiplier

---

[3] The Court was unable to locate in the Agreement or the Motion an exact figure for the attorneys' fees Counsel requests. Plaintiff's Counsel repeatedly requested forty percent of the portion of the fund to be distributed to the collective, however, and the amount of that fund is $1,550,000. (*See, e.g.*, ECF No. 25-3 at PageID 111.) 40% of $1,550,000 is $620,000. He also stated that the requested attorneys' fees were only 14.75% of the entire settlement, and 14.75% of $4,199,725 is $619,459.44. (*See id.*) Plaintiff's Counsel separately seeks $5,252.70 in costs, which the Court finds reasonable. (*See id.* at PageID 111–12.)

5

of 6. (ECF No. 25-1 at PageID 84–85.) Assuming a "mid-range hourly rate of $450" and Plaintiff's Counsel's estimation that he and Ms. De Arcangelis have spent 240 hours litigating this case, (ECF No. 25-1 at PageID 84–85), the Court calculates the current lodestar to be $108,000 (450 multiplied by 240) with a lodestar multiplier of 5.74 (620,000 divided by 108,000). Plaintiff's Counsel argues that this amount will decrease given the hours that he and Ms. De Arcangelis will spend administering the settlement, which is estimated at 40 additional hours. (ECF No. 25-1 at PageID 85.) By his calculations, the lodestar amount after administration will be closer to $140,280. (ECF No. 25-1 at PageID 85.) Again, the Court's calculations differ somewhat; it calculates the lodestar to be $126,000 (multiplying 450 by 280) with a multiplier of 4.92 (620,000 divided by 126,000).

Regardless, these specific calculations ultimately border on irrelevant because they presume a uniform rate that may not be applicable at all. Indeed, Plaintiff's Counsel uses the same rate—$450—for both attorneys in this matter but does not include information indicating that Ms. De Arcangelis has comparable experience or expertise. Nor has he broken down the estimated 240 hours by attorney. This information is vital because it goes to the heart of the reasonableness analysis; should Ms. De Arcangelis be less experienced,[4] a lower rate would likely be appropriate for her hours worked, which would in turn decrease the lodestar and increase the lodestar multiplier, making Plaintiff's Counsel's request even less reasonable. To illustrate this principle, if the appropriate rate was actually $300 per hour (for both attorneys), the current lodestar would be $72,000 (300 multiplied by 240), which would result in a lodestar multiplier of 8.6 (620,000

---

[4] The Court considers this rate to be reasonable for Mr. Parmet based on his experience, but the most the Court has been able to find concerning Ms. De Arcangelis in the Motion and its attachments is Plaintiff's Counsel's declaration that includes the general experience of her *firm* and the fact that she has expended some hours litigating this matter. (ECF No. 25-3 at PageID 107–08, 110.)

divided by 72,000). This potential is of concern to the Court because the sum of the attorneys' fees requested already yields a lodestar well above what this Court is accustomed to seeing in this District,[5] whether based on Plaintiff's Counsel's or the Court's calculations. In addition, it is noteworthy that the remainder of the $1,550,000 fund after attorneys' fees is not entirely left to the potential opt-in plaintiffs, since other costs are also set to come from this fund (*e.g.*, attorneys' costs and the costs and fees to the settlement administrator, which are yet to be determined). (*See* ECF No. 25-2 at PageID 91.) Thus the requested fees constitutes 40% of a fund that is not strictly reserved for the potential plaintiffs in its entirety. In other words, the potential benefit obtained for the potential plaintiffs is, in reality, less than $1,550,000, meaning the requested attorneys' fee constitutes more than 40% of the settlement amount obtained for the plaintiffs. To be sure, this arrangement is not uncommon in a settlement agreement. But it gives the Court pause since the amounts of the additional deductions from the fund are uncertain.[6]

Finally, the Court notes that "'the most critical factor' governing the reasonableness of a few award 'is the degree of success obtained.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The specific nature of the settlement in this matter, however, makes that assessment difficult here, since it is not at all

---

[5] Plaintiff's Counsel cites to courts that have accepted lodestar multipliers as high as 6.96. (ECF No. 25-1 at PageID 85.) But with the exception of one, all of those courts are located in different areas (primarily in the Northeast) and involve varying facts and stages of litigation. As for the one case from within the Sixth Circuit, the fees requested there were inclusive of (significant) costs, which is not the case here. *See Merkner v. AK Steel Corp.*, No. 1:09-CV-423-TSB CLASS ACTION, 2011 U.S. Dist. LEXIS 157375, at *20 (S.D. Ohio Jan. 10, 2011). Furthermore, the Court in that case also applied different rates to the various attorneys based on their experience, which the Court has already explained is not possible here.

[6] Exhibit B of the Agreement governs the distribution of the Gross Settlement Amount of $1,550,000. (*See* ECF No. 25-2 at PageID 104.) The Court notes that the requested attorneys' fees plus the amounts set forth in Exhibit B exceeds $1,550,000.

certain how many individuals will opt in to the settlement and, accordingly, how much the ultimate recovery will be. Nor is it clear why the agreement to forgive overpayments is of particular significance to the potential opt-in plaintiffs, who were presumably under-paid.[7]

For all of these reasons, the Court cannot agree with Plaintiff at this time that the attorneys' fees provided for in the settlement are reasonable.

### III. Service Award and Release Payment

The Motion argues that Plaintiff should receive a service award as set forth in the settlement agreement. (ECF No. 25-6 at PageID 276.) The Court has been unable to find an exact figure for this award, however, which appears to be in addition to a release payment. (*See* ECF No. 25-2 at PageID 98–99.) In addition, the Agreement provides for the payment of the release payment from the gross settlement amount but does not specify from where the service award would come, which adds some confusion to the Court's consideration of the Agreement. (*See* ECF No. 25-2 at PageID 91.) Accordingly, it is impossible for the Court to say whether the service award is reasonable. Even if the Court has overlooked the amount, there does not appear to be any information relating to the general *amount* of work Plaintiff has performed. The Court will need more than the general information set forth in the Motion to approve such an award, especially since this amount is set to come from the $1,550,000 fund that is ostensibly set to go to all potential plaintiffs. (*See* ECF No. 25-1 at PageID 77.)

Further, the agreement states that "[i]n exchange for signing a General Release releasing all claims against Releasees . . . [Plaintiff] may seek approval of a payment not to exceed

---

[7] The Court recognizes that there is language in the agreement that releases claims of overpayment. (ECF No. 25-2 at PageID 92.) But the circumstances in which an individual would raise such a claim is not immediately clear to the Court, especially since, as mentioned, Defendant apparently had already forgiven these overpayments by the time this case was filed. (ECF No. 25-2 at PageID 95.)

$5,000.00."  (ECF No. 25-2 at PageID 99.)  There is very little context for this amount, however, such as what her potential claims may be.

### IV. *Clark v. A&L Homecare & Training Center*

A few months before Plaintiff filed the Motion now before the Court, the Sixth Circuit held in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) that "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves."  *Clark*, 68 F.4th at 1011.  Since the agreement in this case involves notice to employees other than Plaintiff, and since the Motion does not meaningfully engage with this issue, the Court has insufficient information on which it could make this necessary determination.

### CONCLUSION

For these reasons, the Motion is **DENIED WITHOUT PREJUDICE**.  Should parties submit a subsequent motion for approval, it should include sufficient information to resolve all of the aforementioned concerns.

**IT IS SO ORDERED**, this 9th day of January, 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE